```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND

                                   :
HARDAWAY, et al.
                                   :
     v.                            :   Civil Action No. DKC 13-0149
                                   :
EQUITY RESIDENTIAL SERVICES, LLC,
et al.                             :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case are the following motions: (1) motion to dismiss filed by Defendants Equity Residential Services, LLC, Equity Residential Services II, LLC, and Equity Residential REIT Services, Inc. (collectively, "Defendants") (ECF No 27); (2) motion to strike as untimely Defendants' motion filed by *pro se* Plaintiffs Angelene Hardaway and Lena Hardaway (collectively, "Plaintiffs") (ECF No. 31); and (3) motion for entry of default filed by Plaintiffs (ECF No. 32).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss filed by the named defendants will be granted, but Plaintiffs will be given leave to file an amended complaint within fourteen (14) days, naming proper parties in accordance with the memorandum opinion.  The motions to strike and for entry of default filed by Plaintiffs will be denied.

**I.   Background**

The thorny procedural history in this case has been set forth in prior orders, but will be discussed here for clarity purposes. Plaintiff Angelene Hardaway ("Angelene") resides at The Veridian – an apartment complex in Silver Spring, Maryland. Angelene Hardaway asserts that she is disabled, although she does not specifically identify her disability. Plaintiff Lena Hardaway is Angelene's sister and is the payee of her disability benefits. Plaintiffs commenced this action on January 14, 2013, by filing a complaint against Equity Residential Holding, LLC. Concomitantly with their complaint, Plaintiffs filed separate motions for leave to proceed *in forma pauperis*, which the court granted the following day. The complaint relates to a dispute over rent between Plaintiffs and the manager of Angelene's apartment building. Similar allegations of discrimination were alleged by Plaintiffs in two prior actions. *See* Civ. No. DKC 11-1924; Civ. No. DKC 11-2224. On March 12, 2013, defense counsel filed correspondence advising that "Equity Residential Holding LLC . . . has no relationship to Equity Residential Management, L.L.C., the entity that manages The Veridian apartment complex, where Ms. Angelene Hardaway currently resides." (ECF No. 9). Noting that "Defendant contends that Plaintiffs have sued the wrong party, and suggests that the proper party is Equity Residential Management, LLC, which was a

defendant in the prior suit[s]," the court directed Plaintiffs to show cause why their complaint should not be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (ECF No. 10). Plaintiffs responded on May 3, 2013, by filing an amended complaint, asserting substantively similar claims as the original pleading against three new defendants – Equity Residential Services, L.L.C., Equity Residential Services II, LLC, and Equity Residential Services Inc.  (ECF No. 11).  They separately filed a motion for leave to file an amended complaint, contending that there has been no prior complaint related to the facts alleged in *this* action.  (ECF No. 12).

On May 10, 2013, the court entered an order dismissing the case.  (ECF No. 13).  The court determined that Plaintiffs have already litigated their disability discrimination and associated retaliation claims and that the court lacked subject matter jurisdiction over any race or gender discrimination claim because Plaintiffs failed to exhaust.  (*Id.* at 2).  Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit, which vacated the order of dismissal and remanded for further proceedings on December 5, 2013.  (ECF No. 17-1).  The Fourth Circuit determined, *inter alia*, that "[t]he district court erred . . . in concluding summarily on the bare record before it, that the Hardaways' prior claims, asserted against different defendants from those sued here, were precluded as a

3

matter of law.  This is because, as the Hardaways assert in their informal brief on appeal, the claims alleged here arose after the district court had dismissed their earlier case." (*Id.* at 4-5).  The appellate court "express[ed] no view as to how the district court might best proceed upon remand, or whether any asserted claims might survive further preliminary proceedings."  (*Id.* at 5).  On December 30, 2013, the undersigned entered an order reopening the case and granting Plaintiffs' motion for leave to file an amended complaint.  (ECF No. 19).

The following factual account is construed from the amended complaint.  Plaintiffs assert that Angelene "is being coerced, intimidated[,] and discriminated against because she is an African American, [w]oman[,] and a person with disabilities." (ECF No. 11, at 2).  Angelene allegedly filed a complaint with "Equity Residential Corporate office, HUD fair housing authority[,] and The Equal Rights Center."  (*Id.*).  Angelene Hardaway avers that one month after she filed the complaint, "Equity Residential served [her] with a Notice to Quit."  She broadly states that Defendants have "unjustly received and retained benefits of rent, water[,] and sewer payments over the rental agreement amount," but that Equity Residential dismissed her complaint that she was overcharged, which prompted her to file a lawsuit on July 14, 2011.  Plaintiffs further contend

that Equity Residential failed to supply Angelene Hardaway with accurate monthly rental statements. (*Id.* at 3). They state that "[w]hen Plaintiff Angelene complained about the overcharge, defendant's agent ignored her, and refuse[d] to correct their mistake, until Plaintiff filed a lawsuit in August 2011." (*Id.*). Plaintiffs aver:

> In Defendant['s] bizarre monthly statements from June 2012-October 2012, the defendant credited Angelene thousands of dollars. Plaintiff believes, the Property Manager [Matthew Moffett] wanted to lure her into a false sense [] "that Equity Residential was paying back the money they defrauded from plaintiff." However, Angelene's trustee kept paying the required monthly rent. (Plaintiff believes[] the Property Manager was trying to lure plaintiff into a trap to stop paying the monthly rent, so he can have a reason to evict Angelene.). In November, the Property Management reversed the credit and overcharged plaintiff another $300. [O]n November 12, 2012, the Property Manager once again[] harassed, intimidated, and endangered plaintiff safety.

Plaintiffs further aver that Angelene's rent was raised without informing Montgomery Housing Authority and Moderated Priced Dwelling Unit agency. Angelene avers that her rent was increased to $2,313.00 per month, and that she is "being charged with the highest rent in the building." (*Id.* at 4). Plaintiffs believe that "[t]he 2,797.56% increase[] proves [that] Equity Residential agents are illegally taking advantage of Angelene's disability. Angelene Hardaway is the only tenant in the

5

building who received a $2,797.56% increase." (*Id.*). Plaintiffs assert that the Property Manager withheld the Moderated Priced Dwelling Unit documents from Angelene, but that she completed all such documents for the May 2012 to May 2013 term. Plaintiffs state that Equity Residential served Angelene with a Notice to Quit on December 18, 2012 as a result of her complaints regarding discrimination. (*Id.* at 5-6).

The amended complaint asserts violations of the Americans with Disabilities Act ("ADA") and the Civil Rights Act, and contains the following causes of action: discrimination based on disability, sex, and race (count I); negligence (count II); fraud (count III); and unjust enrichment (count IV). Defendants moved to dismiss on March 14, 2014. (ECF No. 27). Plaintiffs were provided with a *Roseboro* notice, which advised them of the pendency of the motion to dismiss and their entitlement to respond within seventeen (17) days from the date of the letter. *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir.1975) (holding *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment). On March 21, 2014, Plaintiffs filed separate motions to strike as untimely the motion to dismiss and for entry of default against Defendants. (ECF Nos. 31 & 32). On May 28, 2014, Plaintiffs opposed Defendants' motion to dismiss (ECF No. 35), and Defendants replied (ECF No. 36).

6

**II. Analysis**

    **A.  Defendants' Motion to Dismiss**

        **1.  Standard of Review**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty.*

*Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (*quoting* Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**2. Analysis**

**a. Proper Parties**

As an initial matter, Defendants reassert that the proper defendant here is Equity Residential Management, LLC ("ERM") because it manages The Veridian apartment complex where Angelene resides. Defendants maintain that they are not proper parties to this lawsuit and should be dismissed. (ECF No. 27-1, at 2). In the amended complaint, Angelene asserts that she:

> complained to *Equity Residential [c]orporate office* and filed a complaint with HUD on November 13, 2012 [] about Property Manager

8

> Matthew Moffett's inappropriate behavior. In the letter to Equity Residential, Angelene complained that Mr. Moffett was aggressively discriminating against her and endangered her safety.

(ECF No. 11, at 3) (emphasis added). In their opposition to Defendants' motion to dismiss, Plaintiffs reproduce documentation from the Maryland Department of Assessments and Taxation reflecting that Silver Spring Gateway Residential LLC owns the Veridian. (ECF No. 35, at 3). The mailing address for Silver Spring Gateway Residential LLC is listed as: "c/o *Equity Residential* – Yolanda Johnson, P.O. Box 87407, Chicago, IL." (*Id.*) (emphasis added). Plaintiffs further state that "[a]ccording to Illinois government website [] Equity Residential's Registered Agent [is] located in Chicago with Corporate office located at 2 N. Riverside Plaza[,] Chicago, IL 60606." Plaintiffs reproduce printouts from the website showing the address of Defendants Equity Residential Services, LLC, Equity Residential Services II, LLC, and Equity Residential REIT Services Inc. as the corporate headquarters identified above. (*Id.* at 5). Plaintiffs have named Equity Residential Services, LLC, Equity Residential Services II, LLC, and Equity Residential REIT Services Inc. as defendants, but these companies appear to be subsidiaries of Equity Residential. *See* List of Subsidiaries of Equity Residential, available at http://www.sec.gov/Archives/edgar/data/906107/000119312509038255

9

/dex21.htm (last visited on February 20, 2015); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (in reviewing motions to dismiss, the Court may consider allegations in the complaint, *matters of public record*, and documents attached to the motion to dismiss that are integral to the complaint and authentic). As indicated in the previous lawsuit, Equity Residential Management, LLC manages the Veridian, which property is owned by EQR-Silver Spring Gateway Residential, LLC, and falls under the umbrella of Equity Residential. (*See* DKC No. 11-1924, at ECF No. 39).

The named defendants here do not appear to have any relationship to the allegations in the amended complaint. Accordingly, Defendants are not proper parties here.[1] The

---

[1] Defendants also argue that even if they were proper parties to this lawsuit, Plaintiffs' claims are barred by claim preclusion because they are in privity with Equity Residential Management LLC ("ERM") and their interests were "directly represented by ERM in the [prior lawsuit by Plaintiffs]." (ECF No. 27-1, at 8). These arguments are unavailing. As the Fourth Circuit pointed out, Plaintiffs' claims in the instant lawsuit relate to events *postdating* their prior lawsuit. Under Maryland law, however, application of *res judicata* requires satisfaction of three conditions: "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined *or that which could have been raised and determined in the prior litigation*; and (3) there was a final judgment on the merits in the prior litigation." *Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140 (2012) (emphasis added). The Fourth Circuit acknowledged that the claims in this matter largely track those asserted in the prior lawsuit, but the issues raised in the instant case are not identical to ones previously adjudicated. Plaintiffs raise new

essence of the amended complaint is that the property manager at the Veridian – Matthew Moffett – overcharged Angelene rent and "harassed her," and that when she complained to "Equity Reesidential Corporate office," she was served with a Notice to Quit. It appears that the proper parties here are Equity Residential Management, LLC, the entity that manages the Veridian apartment complex, and EQR-Silver Spring Gateway Residential, LLC, f/k/a Silver Spring Gateway Residential, LLC, which owns the complex and whose address is the corporate headquarters in Chicago.[2]

Next, the court must review the claims in the amended complaint to determine whether Plaintiffs should be given leave to amend the complaint to name and serve proper parties or whether any of the claims in the amended complaint survive dismissal.

---

facts in their amended complaint postdating the issuance of the September 6, 2012 memorandum opinion, which could not earlier have been raised.

[2] The FHA imposes liability in accordance with traditional agency principles. *See United States v. Sturdevant*, Civ. Action No. 07-2233-KHV, 2009 WL 1211051, at *6 (D.Kan. 2009). "Courts have generally found that property owners have a non-delegable duty to not discriminate and that they will be held vicariously liable for discriminatory actions of their rental agents." *Id.*; *Alexander v. Riga*, 208 F.3d 419, 433 (3rd Cir. 2000); *United States v. Balistrieri*, 981 F.2d 916, 930 (7th Cir. 1992) (property owner liable for wrongful acts of rental agent committed within scope of authority); *United States v. Habersham Props., Inc.*, 319 F.Supp.2d 1366, 1375-76 (N.D.Ga. 2003) (property owner liable for conduct of employee of property management company).

**b.   Claims in the Amended Complaint**

Plaintiffs assert in the amended complaint that "Defendant[s] violated Federal civil rights laws including American[s] with Disabilit[ies] Act and The Civil Rights Act." (ECF No. 11 ¶ 4).

**i. The Americans with Disabilities Act**

Plaintiffs' ADA claim suffers from the same deficiencies identified in the prior memorandum opinion. *See Hardaway v. Equity Residential Management, LLC*, Civ. Action No. DKC 11-1924, 2012 WL 3903489, at *5 (D.Md. Sept. 6, 2012) ("[T]he public accommodation provision of the ADA cannot apply against The Veridian."). Plaintiffs do not specify which portions of the ADA have been violated, but Title III, addressing public accommodations, is the only area potentially implicated here. Title III prohibits discrimination by "any person who owns, leases (or leases to) or operates a place of public accommodation."  42 U.S.C. § 12182.  The statute enumerates twelve categories of establishments which are considered places of public accommodation, including: "an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor." 42 U.S.C. § 12181(7).  The Veridian does not fall under any of

12

those groups. The rationale in *Mitchell v. Walters*, Civ. Action No. 10-1061 (SRC), 2010 WL 3614210, at *4 (D.N.J. Sept. 8, 2010), applies here:

> A residential apartment complex, such as the Wyndhurst where Plaintiff claims Defendants failed to accommodate her disabilities, does not fall into any of those groups. The category which most resembles the Wyndhurst is the "inn, hotel, motel, or other place of lodging" group. Even construing this category liberally, the Court discerns no facts in the Amended Complaint which would ever remotely support the characterization of Plaintiff's apartment complex as a place of lodging or other transient housing falling with the purview of the ADA.

*See also Indep. Housing Svcs. of San Francisco v. Fillmore Ctr. Assocs.*, 840 F.Supp. 1328, 1344 (N.D.Cal. 1993) ("[A]partments and condominiums do not constitute public accommodations within the meaning of the [ADA]."). The court in *Mitchell*, 2010 WL 3614210, at *4, further noted that "[t]he Wyndhurst's receipt of federal funds in partial payment of Plaintiff's rent through vouchers issued by HUD does not transform the apartment complex into a place of public accommodation." *See also Reyes v. Fairfield Props.*, 661 F.Supp.2d 249, 264 n.5 (E.D.N.Y. 2009) (concluding that any ADA claim plaintiff might have pled would be insufficient as a matter of law, noting that property management defendants did not own or operate a place of public accommodation simply because property accepted tenants receiving

federal housing subsidies). Accordingly, any ADA claim in this context is subject to dismissal.

### ii. Fair Housing Act

Plaintiffs also asserts that "The Civil Rights Act" was violated. (ECF No. 11 ¶ 4). Plaintiffs' amended complaint at its core alleges housing discrimination, thus the amended complaint will be construed as alleging a violation of the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, as amended, 42 U.S.C. § 3601, *et seq.* The FHA prohibits housing discrimination based on "race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). To state a *prima facie* case of discrimination under Section 3604(b), Angelene Hardaway must allege that she is a member of a protected class and that she was treated differently than other tenants *because of her membership in that class*. *See Pinchback v. Amistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990); *Roberson v. Graziano*, Civ. No. WDQ-09-3038, 2010 WL 2106466, at *2 (D.Md. May 21, 2010). Insofar as the amended complaint alleges race and gender discrimination, Plaintiffs include only conclusory allegations that Angelene's rent was increased because of protected status. The amended complaint avers that Angelene is "the only tenant in the building who received a 2,797.56% increase. This outrageous increase proves Equity Residential's agent has, and is harassing, intimidating and

14

discriminating against Angelene Hardaway for being a [w]oman and/or, African American and/or, person with disabilities." (ECF No. 11, at 4). Plaintiffs broadly state, without any specificity, that on November 12, 2012, "the Property Manager once again harassed, intimidated, and endangered plaintiff['s] safety." (ECF No. 11, at 3). Nowhere in the amended complaint do Plaintiffs state that any remarks were made by the property manager revealing race or gender-based animosity. The amended complaint fails to allege, beyond mere speculation, that Angelene was treated differently from other tenants *because of* her race and gender. *See, e.g., Mitchell*, 2010 WL 3614210, at *6 (dismissing FHA claim where "accusations of illegal housing discrimination [were] based on suspicion, speculation and conclusory assertions.").

As for the failure to accommodate claim under the FHA, to state a claim of discrimination under Section 3604(f), a plaintiff "must show that [she] is handicapped and that [she] was either discriminated against because of [her] handicap or denied a reasonable accommodation necessary to allow [her] the same use and enjoyment of [her dwelling as other non-handicapped persons." *Roberson*, 2010 WL 2106466, at *2. The amended complaint still fails to elaborate on the nature of Angelene's disability. The only assertion suggesting the extent of her disability is that "[d]ue to [Angelene's] disability, [she] has

15

a device that helps her communicate that records and transcribes words." (ECF No. 11, at 4). The allegations in the amended complaint that Angelene's rent was increased due to her disability suffer from the same infirmity as her FHA claim based on gender and race. Plaintiffs offer no factual allegations to allow for a reasonable inference that Angelene's rent was increased because she is disabled. The statute also makes it unlawful, in the case of disabled persons, to refuse "to make reasonable accommodations in rules, policies, practices, or services, *when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling*." 42 U.S.C. § 3604(f)(3)(B) (emphasis added). Although the amended complaint asserts that Equity Residential did not accommodate Angelene's request that all communication be in writing, this request has nothing to do with her ability to use and enjoy her dwelling. *See, e.g., Mitchell*, 2010 WL 3614210, at *6 ("Taking into account the kinds of evidence which might demonstrate discriminatory intent, the Court finds that the Amended Complaints are bereft of any facts which directly charge or even permit the reasonable inference that Defendants' challenged actions were motivated by either racial animus or an intent to deprive Mitchell of access and use of housing based on her arthritis and diabetes."); *Croley v. Hunting Creek Club Condominium Assoc.*, No. 105CV1326CMHBRP, 2005 WL 5269272, at *2

16

(E.D.Va. Dec. 13, 2005) ("Simply put, at no point has plaintiff alleged that, because of his handicap, he was denied the ability to rent housing in defendant's building, denied services or other privileges available to other tenants, denied the ability to make reasonable modifications to his unit to allow him full enjoyment of the unit, or denied reasonable accommodations in rules and policies so as to allow plaintiff equal opportunity to use the unit."). Thus, Plaintiffs have not stated a claim under the FHA insofar as they allege a failure to accommodate.

The allegations in the amended complaint also suggest that Plaintiffs raise a retaliation claim under the FHA. The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. "In order to [state] a claim of retaliation under the FHA, a plaintiff must [allege] that: (1) the plaintiff was engaged in a protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action." *Hall v. Greystar Mgmt. Serv., L.P.*, 28 F.Supp.3d 490, 495 (D.Md. 2014). To

17

survive a motion to dismiss an FHA retaliation claim, a plaintiff "must sufficiently allege a discriminatory intent on the part of Defendants." *Bailey v. Vill. Green Mut. Homes*, No. RWT 12-cv-3079, 2014 WL 198348, at *3 (D.Md. Jan. 14, 2014) (*citing Oxford House v. Town of Fayetteville*, Civ. Action No. 1:11-00402, 2012 WL 441156 (S.D.W.Va. 2012)).

The amended complaint states that "Equity Residential served a Notice to Quit on December 18, 2012" as a "direct [and] proximate result of Angelene" having complained about being discriminated against, filing the July 2011 lawsuit, complaining about the lack of disability access door, and "[f]iling a good faith complaint with the Equity Residential Corporate office, The Equal Right[s] Center and HUD fair housing authority on November 13, 2012." (ECF No. 11, at 5). In the motion for leave to amend the complaint, Angelene stated that eviction proceedings were initiated against her although she did not owe any money. (*See* ECF No. 12, at 2). The amended complaint avers that Angelene spoke on the phone with Property Manager Matthew Moffett on December 8, 2012, that he "admitted Angelene doesn't owe Equity Residential money [] and [t]hat the Notice to Quit has nothing to do with money." (ECF No. 11, at 4) (internal quotation marks omitted). Accordingly, Plaintiffs may file an amended complaint within fourteen (14) days, setting forth allegations of retaliation under the FHA against Equity

Residential Management, LLC and EQR-Silver Spring Gateway Residential, LLC, f/k/a Silver Spring Gateway Residential, LLC. Considering the potential viability of the retaliation claim under the FHA, the court need not address the adequacy of the state law claims at this time. The sufficiency of any state law claims will be addressed if Plaintiffs state a viable retaliation claim in their amended complaint against the correct defendants.[3]

## III. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted. Plaintiffs will have fourteen (14) days to file an amended complaint naming the two correct defendants and setting forth factual allegations to state a retaliation claim under the FHA. Plaintiffs' motions to strike and for entry of default will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[3] Plaintiffs' two motions to strike as untimely the motion to dismiss and for entry of default will be denied. Defendants timely filed their motion to dismiss after the court extended the time for them to respond to the amended complaint. (See ECF No. 26).