IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELENE HARDAWAY, et al.         :

                               :

      v.                         :   Civil Action No. DKC 13-0149

                               :

EQUITY RESIDENTIAL MANAGEMENT,
LLC, et al.                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is a motion to dismiss filed by Defendant Equity Residential Management, LLC ("Defendant"). (ECF No. 53). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendant's motion to dismiss will be granted.

## I.   Background

The relevant factual background has been set forth previously, but will be recounted here for the purposes of clarity. (*See* ECF Nos. 13; 37). Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiffs Angelene Hardaway and Lena Hardaway (collectively, the "Plaintiffs"), the nonmoving parties.[1]

Angelene resided at The Veridian, an apartment complex located in Silver Spring, Maryland. She asserts that she is

---

[1] For purposes of clarity, this memorandum opinion also refers to Plaintiffs by their first names.

disabled, although she does not specifically identify her disability.   Lena is Angelene's sister and the payee of Angelene's disability benefits.   Plaintiffs, proceeding *pro se*, commenced this action on January 14, 2013, by filing a complaint against Equity Residential Holding, LLC.   (ECF No. 1).   The complaint concerned a dispute over rent between Plaintiffs and the manager of The Veridian.   Similar allegations were alleged by Plaintiffs in two prior actions.   *See* No. DKC-11-1924; No. DKC-11-2224.   On March 12, defense counsel filed correspondence advising that "Equity Residential Holding LLC . . . has no relationship to Equity Residential Management, L.L.C., the entity that manages The Veridian apartment complex, where Ms. Angelene Hardaway currently resides." (ECF No. 9).   Noting that the named defendant "contends that Plaintiffs have sued the wrong party, and suggests that the proper party is Equity Residential Management, LLC, which was a defendant in the prior suit[s]," the court directed Plaintiffs to show cause why their complaint should not be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).   (ECF No. 10).   Subsequently, Plaintiffs filed under seal an amended complaint asserting substantively similar claims as the original pleading against three new defendants: Equity Residential Services, LLC; Equity Residential Services II, LLC; and Equity Residential REIT Services Inc. (ECF No. 11).   Plaintiffs separately moved for leave to file an

amended complaint, contending that there has been no prior complaint related to the facts alleged in *this* action. (ECF No. 12).

On May 10, the court entered an order dismissing the case. (ECF No. 13). The court determined that Plaintiffs had already litigated their disability discrimination and associated retaliation claims and that the court lacked subject matter jurisdiction over any race or gender discrimination claim because Plaintiffs failed to exhaust. (*Id.* at 2). Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit, which vacated the order of dismissal and remanded for further proceedings. (ECF No. 17). The Fourth Circuit determined, *inter alia*, that "[t]he district court erred . . . in concluding summarily on the bare record before it, that the Hardaways' prior claims, asserted against different defendants from those sued here, were precluded as a matter of law. This is because, as the Hardaways assert in their informal brief on appeal, the claims alleged here arose after the district court had dismissed their earlier case." (ECF No. 17-1, at 4-5). The Fourth Circuit, however, "express[ed] no view as to how the district court might best proceed upon remand, or whether any asserted claims might survive further preliminary proceedings." (*Id.* at 5). The undersigned entered an order reopening the case

and granting Plaintiffs' motion for leave to file an amended complaint. (ECF No. 19).

The defendants named in the amended complaint - Equity Residential Services, LLC; Equity Residential Services II, LLC; and Equity Residential REIT Services, Inc. - moved to dismiss. (ECF No. 27). The court granted the motion, dismissed all claims against the named defendants, and granted Plaintiffs 14 days within which to file a second amended complaint. (ECF Nos. 37; 38). The court reasoned:

> The named defendants here do not appear to have any relationship to the allegations in the amended complaint. Accordingly, [the named defendants] are not proper parties here. The essence of the amended complaint is that the property manager at [T]he Veridian – Matthew Moffett – overcharged Angelene rent and "harassed her," and that when she complained to "Equity Residential Corporate office," she was served with a Notice to Quit. It appears that the proper parties here are Equity Residential Management, LLC, the entity that manages [T]he Veridian apartment complex, and EQR-Silver Spring Gateway Residential, LLC, f/k/a Silver Spring Gateway Residential, LLC, which owns the complex and whose address is the corporate headquarters in Chicago.

(ECF No. 37, at 10-11 (footnotes omitted)). Nonetheless, the court proceeded to address Plaintiffs' federal claims in the amended complaint and noted that the pleading raised a retaliation claim under the Fair Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*

Plaintiffs were permitted to "file an amended complaint within fourteen (14) days, setting forth allegations of retaliation under the FHA against Equity Residential Management, LLC and EQR-Silver Spring Gateway Residential, LLC f/k/a Silver Spring Gateway Residential, LLC." (ECF No. 37, at 18-19). Accordingly, the court granted Plaintiffs the opportunity to amend their pleading on narrow grounds – "to file an amended complaint naming the two correct defendants and setting forth factual allegations to state a retaliation claim under the FHA." (*Id.* at 19).

Plaintiffs, still proceeding *pro se* and *in forma pauperis*, filed a second amended complaint and a third amended complaint. (ECF Nos. 39; 41). The third amended complaint did not name the proper parties, but the court noted that, "[c]onsidering the allegations, Plaintiffs' amended complaint will be construed as naming [Defendant]." (ECF No. 42, at 1). On July 29, 2015, and without leave of court, Plaintiffs filed the fourth amended complaint. (ECF No. 50).[2] Plaintiffs assert the following claims against Defendant: unlawful retaliation under the Fair

---

[2] The fourth amended complaint is mistakenly titled the second amended complaint. (*See* ECF No. 50, at 1). Concomitantly with the fourth amended complaint, Plaintiffs moved to file their case under seal. (ECF No. 49). Plaintiffs' motion did not comport with the requirements of Local Rule 105.11 and was denied without prejudice. (ECF No. 61). Plaintiffs have not since filed a properly supported motion to seal, and the clerk now will be directed now to unseal the fourth amended complaint.

Housing Act ("FHA"), Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 *et seq.*, and retaliatory eviction under Md. Code Ann., Real Prop. § 8-208.1 (Count I); fraudulent misrepresentation (Count II);[3] unjust enrichment (Count III); negligence (Count IV); and deceptive trade practices under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (Count V).   (ECF No. 50 ¶¶ 19-60).[4] Plaintiffs request at least $450,000.00 in actual and punitive damages.   Defendant filed the pending motion to dismiss under

---

[3] In Count II, Plaintiffs appear to assert claims for common law fraudulent misrepresentation, and Defendant construes the claims as such. (*See* ECF Nos. 50 ¶¶ 27-36; 53-1, at 10-11).

Plaintiffs also argue that Defendant's "actions and conduct . . . further constitute unconscionable actions or course of action pursuant to 18 U.S.C. § 1030." (ECF No. 50 ¶ 33). It is beyond the court's purview in this civil matter to provide relief under criminal statutes. *See United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."). "If [Plaintiffs] seeks to pursue criminal charges, [they] must bring [their] allegations to the attention of law enforcement authorities." *Randolph v. Holder*, No. ELH-15-982, 2015 WL 1656733, at *2 (D.Md. Apr. 9, 2015), *appeal dismissed* (June 22, 2015).

[4] In the fourth amended complaint, Plaintiff named Equity Residential Management, LLC and John Doe as defendants. According to Plaintiff, "Equity Residential Management[,] LLC is a shell company for Equity Residential Corporate Office aka John Doe[,] which owns [The Veridian]. . . . John Doe is a corporation also organized and existing under the laws of the state of Delaware, with its principal place of business in Chicago, Illinois." (ECF No. 50 ¶¶ 3-4). Equity Residential Management, LLC, herein referred to as "Defendant," was served by Plaintiffs. (ECF No. 52). No other party has been served, and it appears as though Defendant and John Doe are the same entity.

Fed.R.Civ.P. 12(b)(6).  (ECF No. 53).  Plaintiffs were provided with a *Roseboro* notice, which advised them of the pendency of the motion to dismiss and their entitlement to respond within 17 days.  (ECF Nos. 54; 55); *see Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (holding that *pro se* plaintiffs should be advised of their right to file responsive material to a motion for summary judgment).  Plaintiffs responded in opposition and filed a supplemental response, and Defendant replied.  (ECF Nos. 57; 58; 60).[5]

According to Plaintiffs, Defendant "engaged in a pattern and practice of discrimination against Angelene [], once [she] objected to this discrimination and attempted to address it, Defendant[] promptly retaliated against [her].  [] Angelene [] is a person with [a] disability as defined by the [Americans with Disabilities Act ("ADA")]."  (ECF No. 50 ¶ 6).  The following factual account is construed from the fourth amended complaint.  Plaintiff alleges that Defendant purchased The Veridian in 2011 and, since that time, has provided Plaintiffs with "false and intentional[ly] deceptive documentation to harm [them].  [] Defendant unjustly request[ed] and received excess

---

[5] Plaintiffs also sent a letter to Chief Judge Catherine Blake complaining that they "have encounter[ed] discrimination by [t]he [United States] District Court for the District of Maryland for over five years.  The [court] has a widespread [j]udicial [c]ulture of discriminating against self-represented litigants."  (ECF No. 59, at 1).

rent payment over the rental agreement amount." (*Id.* ¶ 7). According to Plaintiffs, Angelene requested an accommodation under the ADA: she "requested [that] all communication to be with her sister, or in the form of documents. Defendant refused [to] accommodate." (*Id.*). Again, the fourth amended complaint includes no specific allegation concerning Angelene's disability necessitating accommodation.

Lena allegedly discovered evidence of repeated overcharges on Angelene's online rent payment portal in June 2011. Although Angelene paid the July 2011 rent in full, Plaintiffs assert that Defendant brought suit for repossession due to failure to pay June 2011 rent. Subsequently, Lena "printed the cancelled check proving the rent was paid in full plus extra money for the next July, August and September rents all paid in full. Defendant[] [was] trying to extort another $741.48 on top of the inflated rent Plaintiff already paid in June." (*Id.* ¶ 9). According to Plaintiffs, The Veridian's leasing agent, Dana Williams, acknowledged that the June 2011 rent was paid in full, but she also communicated that Angelene owed in excess of $1,000.00 in late utility bills. Protesting that she paid utilities directly to the utility companies, Angelene allegedly showed Ms. Williams copies of the utility bills paid in full. (*Id.* ¶ 10). The fourth amended complaint refers to a hearing – apparently regarding the repossession action referenced above – that was

scheduled for the following week on July 8, 2011. (*See id.* ¶ 11). Lena called Matthew Moore, who Plaintiffs allege served as Defendant's counsel, to discuss Angelene's rent payment history. During the July 6 phone call, Lena and Mr. Moore disputed whether Angelene owed money for rent or utilities, and Mr. Moore did not follow up with Plaintiffs to resolve the issue. (*Id.* ¶ 12).

On July 19, Defendant allegedly demanded that Angelene pay $795.11 more than the amount called for in the rental agreement. "Three days later . . . , [Defendant] demand[ed] [that] Angelene pay $1,928 over the agreed rental amount. Lena[] already overpaid July rent and refused [to] pay any more of the extorted rental amount." (*Id.* ¶ 13). Plaintiffs contend that, subsequently, they lodged complaints with the "Equity Residential Corporate office, HUD fair housing authority[,] and [t]he Equal Rights Center. One month later, Equity Residential served [] Angelene with a Notice to Quit." (*Id.* ¶ 14). The fourth amended complaint sets forth no facts regarding the resolution of Plaintiffs' communications with Defendant, the United States Department of Housing and Urban Development ("HUD"), or the Equal Rights Center. Furthermore, the pleading is devoid of allegations concerning the Notice to Quit.

Plaintiffs contend that, from June to October 2012, "[D]efendant credited Angelene over $3,000. In November,

[Defendant] reversed the credit and overcharged [Angelene] another $300. Defendant[] continued to harass Angelene [] after she requested reasonable accommodations." (*Id.* ¶ 15). That month, a property manager paid Angelene a visit at her apartment unit. Although she requested that the property manager leave, he did not; he allegedly spoke loudly about Angelene's private information within earshot of her neighbors. Plaintiff lodged additional complaints with the Equity Residential corporate office and HUD. The complaint concludes that the "property manager decided it would be easier to evict Angelene [] [than] to comply with the [ADA]." (*Id.*).

Plaintiffs assert that Angelene's apartment unit was subsidized from at least May 2012 to May 2013 by HUD's Section 8, which is the Housing Choice Voucher Program, as well as by the Montgomery County Moderately Priced Dwelling Unit ("MPDU") Program. According to Plaintiffs, Defendant benefited from the tax incentives offered by these government programs but "failed to abide [by] the regulations." (*Id.* ¶ 16). At some point, Angelene lodged complaints with the director of the "Maryland Housing Authority" regarding Defendant's "refus[al] to follow HUD regulations or [MPDU] regulations." (*Id.*). Plaintiffs contend that:

> Defendant failed to contact both agencies for approval before raising rent. In [the summer and fall] of 2012, Property Manager

> refused to comply with Angelene['s] request
> to communicate with her disability aid or
> provide documents, so he tried to trick
> [her] into signing a digital acceptance
> contract without seeing or explaining all
> the terms.  He refused to allow Angelene to
> see a full lease.  When Angelene's caretaker
> questioned the management team about the
> overcharge, they continued to state, ["We
> are] looking into it."  When Lena requested
> the full lease, [Mr. Moffett] said
> everything is "digital now."  Lena wrote
> several [faxes and e-mails] to the corporate
> office complaining about the discrimination.
> However, these letters were being ignored by
> the corporate office.

(*Id.*).  In a phone conversation on December 18, 2012, Plaintiffs
asked Mr. Moffett "why Angelene [was] being charge[d] $2,313.00
– [$500.00] more than the most expensive one-bedroom in the
building." (*Id.* ¶ 17).  Mr. Moffett allegedly conceded that
Angelene did not owe money to Defendant and that the Notice to
Quit was not related to money owed.  Plaintiffs assert that the
large increase in monthly rent – they assert that rent increased
by 2,797.56%, a statistic that is not borne out by the figures
set forth in the fourth amended complaint – "proves [D]efendant
was discriminating against Angelene." (*Id.*).[6]  Plaintiffs
further aver that Angelene's rent was raised without informing

---

[6]  Plaintiffs appear to include a passage from rental
documentation noting that, "[i]f you sign a renewal lease for
the 13 month lease option above, your Monthly Apartment Rent
will change by $1,147.00, which is a 2,797.56% difference."
(ECF No. 50, at 12).

HUD or the MDPU program.  There are no allegations, however, that Plaintiffs paid the increased rent in 2012 or 2013.

Defendant evicted Angelene in June 2013 because she "complained about[] not receiving the *accommodations* request, that all communication [] be in writing." (*Id.* ¶ 16 (emphasis in original)).  Although Defendant refused to provide grounds for the eviction, Plaintiffs assert that the action was taken in retaliation for numerous complaints lodged with government agencies, a nonprofit, and Defendant itself dating back to 2011. (*See id.* ¶¶ 17-18).

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). At this stage, all well-pleaded allegations in a complaint must

be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Allegations of fraud, which Plaintiffs assert throughout the fourth amended complaint, are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b). *Harrison*, 176 F.3d at 783. Rule 9(b) states that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Such circumstances typically "include the 'time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Id.* at 784 (quoting 5 Charles Alan

Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)). Rule 9(b) provides the defendant with sufficient notice of the basis for the plaintiff's claim, protects the defendant against frivolous suits, eliminates fraud actions where all of the facts are learned only after discovery, and safeguards the defendant's reputation. *Id.* at 784 (citation omitted). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6) review. *See id.* at 783 n.5.

Furthermore, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean, however, that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). Even when *pro se* litigants are involved, however, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III. Analysis

In their response to the pending motion to dismiss, Plaintiffs do not challenge Defendant's specific legal

arguments; rather, Plaintiffs repeat many of the same conclusory allegations in their opposition brief that appeared in the fourth amended complaint.  They also argue that: Defendant failed to challenge the accuracy of Plaintiffs' allegations (ECF No. 57, at 5-7); Plaintiffs are *pro se* litigants entitled to liberal construction of their claims (*id.* at 8-11); Defendant is misleading the court and engaging in improper litigation tactics (*id.* at 11-13); and the Fourth Circuit has already ruled in this case (*id.* at 12).  Accordingly, the court has discretion to treat Defendant's arguments as uncontested and dismiss the pleading.  *See Grinage v. Mylan Pharm., Inc.*, 840 F.Supp.2d 862, 867 n.2 (D.Md. 2011) ("[The plaintiff] failed to address this argument in her response, so the court will treat this claim as abandoned." (citing *Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777 (D.Md. 2010))).  Nonetheless, the court will examine Plaintiffs' claims under Rule 12(b)(6) and federal pleading standards.

**A. FHA Retaliation and Retaliatory Eviction (Count I)**

Plaintiffs purport to assert a retaliation claim under the FHA, which makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603,

15

3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. To state a claim of retaliation under the FHA, Plaintiffs must allege that: "(1) [they were] engaged in a protected activity; (2) the defendant was aware of that activity; (3) the defendant took adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action." *Hall v. Greystar Mgmt. Servs., L.P.*, 28 F.Supp.3d 490, 495 (D.Md. 2014) (quoting *Matarese v. Archstone Pentagon City*, 795 F.Supp.2d 402, 442 (E.D.Va. 2011)). To survive a motion to dismiss, Plaintiffs "must sufficiently allege a discriminatory intent on the part of Defendant[]." *Bailey v. Vill. Green Mut. Homes*, No. RWT 12-cv-3079, 2014 WL 198348, at *3 (D.Md. Jan. 14, 2014) (citing *Oxford House v. Town of Fayetteville*, No. 1:11-00402, 2012 WL 441156, at *5 (S.D.W.Va. Feb. 10, 2012)); *see Sofarelli v. Pinellas Cty.*, 931 F.2d 718, 722 (11th Cir. 1991) ("In order to prevail under the Act, [the plaintiff] has to establish that race played some role in the actions of [the defendants].").

Here, the fourth amended complaint states that Plaintiffs' complaints lodged with Defendant, a nonprofit organization, and government agencies constitute protected activity, and "[a]ll adverse actions following such requests and complaints . . . constitute retaliation by Defendant[] as well as unlawful

discrimination."[7]   (ECF No. 50 ¶ 21).   According to Plaintiffs,
Defendant retaliated by:

> a.   Posting notices for rent over the
> rental agreement amount;
>
> b.   Failing and refusing to accommodate;
>
> c.   Directing Angelene [] to pay rent over
> the agreed rental amount;
>
> d.   Directing Angelene [] to agree to a
> digital lease without seeing a full detailed
> lease;
>
> e.   Continued refusal of all reasonable
> accommodations[,] requests and complaints;
>
> [f]. Refusing   [Angelene's]   reasonable
> accommodations by threatening and attempting
> to evict and . . . evict[ing] [her in] June
> 2013;
>
> [g]. Angelene [] [was] placed by Defendant[]
> under undue scrutiny and harassment[.]

(*Id.* ¶ 22).

An FHA retaliation claim must arise from the exercise or
enjoyment of rights granted or protected by §§ 3603, 3604, 3605,

---

[7]   In a prior memorandum opinion, the court dismissed
Plaintiffs' FHA discrimination claim.  The court reasoned that
Plaintiffs offered no factual support to allow the reasonable
inference that a rent increase or Defendant's alleged failure to
accommodate was due to Angelene's race, gender, or disability.
(*See* ECF No. 37, at 14-17).

Similarly, Plaintiffs assert claims under the ADA in Count
I.   (ECF No. 50 ¶¶ 23-25).   The court previously dismissed
Plaintiffs' discrimination claim arising under the ADA, and
furthermore, the fourth amended complaint includes no further
allegations regarding Plaintiffs' disability.   To the extent
that Plaintiffs assert claims under the ADA, they will be
dismissed.

or 3606.   Relevant here, § 3604(f) "makes it unlawful to discriminate in the rental of a dwelling because of a renter's handicap, which includes a refusal to permit reasonable modifications of the premises or to make reasonable accommodations in rules, policies, practices, or services" when such accommodations may be necessary to afford the renter equal opportunity to use and enjoy a dwelling. *Hall*, 28 F.Supp.3d at 495.   The fourth amended complaint asserts that Defendant did not accommodate Angelene's requests that all communications be in writing or directed to Lena, but these requests had nothing to do with her ability to use and enjoy her apartment unit. *See* 42 U.S.C. § 3604(f)(3)(B); (ECF No. 50 ¶¶ 7, 16, 22).   In the pleading, Plaintiffs again merely conclude, without further factual support, that Angelene is disabled and suffers from a handicap. *See Costello v. Malcolm*, No. 5:12CV00025, 2012 WL 2527019, at *6 (W.D.Va. June 29, 2012) ("[T]here is no suggestion that plaintiffs suffer from a handicap which [defendant] must reasonably accommodate by ridding the apartment of mold. . . . [A]bsent more than is alleged here, a claim for discrimination and retaliation under the FHA is not actionable."). Furthermore, the pleading is devoid of plausible allegations that Defendant was motivated by an intent to discriminate. *See Davis v. Raleigh Hous. Auth.*, No. 5:09-CV-522-F, 2011 WL 832330, at *4 (E.D.N.C. Jan. 27, 2011)

("Plaintiff['s] complaint does not fall within the parameters of [§] 3617 as Plaintiff has not alleged that [defendant] had discriminatory motivations for the alleged actions."), *memorandum and recommendation adopted sub nom. Davis v. Hous. Auth. of the City of Raleigh*, No. 5:09-CV-522-F, 2011 WL 830557 (E.D.N.C. Mar. 3, 2011). There simply are no facts alleged that suggest a discriminatory intent by Defendant to retaliate against Plaintiffs due to a disability, or on account of any right secured by § 3604. Accordingly, Plaintiffs cannot maintain an FHA retaliation claim.

In conclusory fashion, Plaintiffs include a claim for retaliatory eviction in the heading of Count I. (ECF No. 50, at 15). Neither Plaintiffs nor Defendant addressed this claim in the briefing papers and it is far from clear that Plaintiffs intend to bring a separate claim under the Maryland statute. The Maryland statute provides:

> (1) For any reason listed in paragraph (2) of this subsection, a landlord of any residential property may not:
>
>> (i) Bring or threaten to bring an action for possession against a tenant;
>>
>> (ii) Arbitrarily increase the rent or decrease the services to which a tenant has been entitled; or
>>
>> (iii) Terminate a periodic tenancy.

(2) A landlord may not take an action that is listed under paragraph (1) of this subsection for any of the following reasons:

(i) Because the tenant or the tenant's agent has provided written or actual notice of a good faith complaint about an alleged violation of the lease, violation of law, or condition on the leased premises that is a substantial threat to the health or safety of occupants to:

1. The landlord; or

2. Any public agency against the landlord;

(ii) Because the tenant or the tenant's agent has:

1. Filed a lawsuit against the landlord; or

2. Testified or participated in a lawsuit involving the landlord; or

(iii) Because the tenant has participated in any tenants' organization.

Md. Code Ann., Real Prop. § 8-208.1(a); *see Lockett v. Blue Ocean Bristol, LLC*, 446 Md. 397, 407 (2016). The current allegations fall well short of articulating a basis for a cause of action but, out of an abundance of caution, this claim will be dismissed without prejudice under *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Plaintiffs assert federal question jurisdiction under 28 U.S.C. § 1331 and include the state law claims under the court's

supplemental jurisdiction. It is also possible that there is diversity of citizenship, although satisfying the amount in controversy is problematic. As will be discussed fully, all of Plaintiffs' other claims – the federal cause of action under the FHA and other state law claims - will be dismissed. To the extent that Plaintiffs intend to assert a separate state law claim under § 8-208.1(a) for retaliatory eviction, any potential damages cannot meet the amount in controversy threshold for federal diversity jurisdiction. *See* 28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."). If a plaintiff prevails under § 8-208.1(a), then "the court may enter judgment against the landlord for damages not to exceed the equivalent of 3 months' rent, reasonable attorney fees, and court costs." Md. Code Ann., Real Prop. § 8-208.1(c)(1). This total cannot plausibly exceed $75,000.00. Accordingly, because all claims over which this court has original jurisdiction are being dismissed, the court must decide whether to exercise supplemental jurisdiction over the potential remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Gibbs*, 383 U.S. at 726 ("Needless

decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well." (footnote omitted)); *Waybright v. Frederick County*, 528 F.3d 199, 209 (4th Cir. 2008) ("With all its federal questions gone, there may be the authority to keep [the case] in federal court . . . but there is no good reason to do so."). In this instance, the court declines to exercise supplemental jurisdiction and Plaintiffs' Maryland retaliatory eviction claim will be dismissed without prejudice.

**B. Fraud and MCPA Violations (Counts II and V)**

Plaintiffs appear to assert in Count II a claim for common law fraud. To state a fraud claim in Maryland, the plaintiff must allege that:

> (1) the defendant made a false
> representation to the plaintiff, (2) the
> falsity of the representation was either
> known to the defendant or the representation
> was made with reckless indifference to its
> truth, (3) the misrepresentation was made
> for the purpose of defrauding the plaintiff,
> (4) the plaintiff relied on the
> misrepresentation and had the right to rely
> on it, and (5) the plaintiff suffered
> compensable injury as a result of the
> misrepresentation.

*Hoffman v. Stamper*, 385 Md. 1, 28 (2005) (citations omitted). According to Plaintiffs, "Defendant[] repeatedly, intentionally and continuously provided false certifications to Angelene that[] her rents were properly calculated, leading Plaintiff[s] to continually pay excessive rents." (ECF No. 50 ¶ 29).

Subject to Rule 9(b)'s heightened pleading standard, Plaintiffs must plead the circumstances of the alleged fraud and misrepresentation with particularity. Here, however, Plaintiffs fail to support their fraud claims with allegations concerning "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citation and internal quotation marks omitted). Plaintiffs theorize that Defendant's documents and representations regarding rent payments owed were fraudulent, but the pleading contains no factual allegations to show their falsity. Plaintiffs conclude generally that the representations made by Defendant's employees were intentional, and that Plaintiffs relied on those false misrepresentations and suffered damage. (*See* ECF No. 50 ¶¶ 30-34). Plaintiffs recite the elements of a fraud action, but, at bottom, no allegations support that Defendant acted with a deliberate purpose to deceive Plaintiffs.

Arising from the same alleged conduct, Plaintiffs assert an MCPA claim in Count V. Under the MCPA, "a person may not engage

23

in any unfair or deceptive trade practice" related to "[t]he extension of consumer credit" or the "collection of consumer debts." Md. Code Ann., Com. Law § 13-303.  Section 13-301(1) defines "[u]nfair or deceptive trade practices" to include "false . . . or misleading oral or written statement[s] . . . or other representations . . . [that have] the capacity, tendency, or effect of deceiving or misleading consumers."  To state an MCPA claim, "a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury." *Turner v. J.P. Morgan Chase, N.A.*, TDC-14-0576, 2015 WL 5021390, at *4 (D.Md. Aug. 21, 2015) (citing *Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d 788, 796 (D.Md. 2013)). Plaintiffs allege that Defendant's conduct:

> constitute[s] false, misleading or deceptive acts or practices in violation of the [MCPA], including but not limited to: [r]epeatedly certifying that [Defendant] had properly calculated the rents for [Plaintiffs] . . . when in fact [Defendant] had not; [c]harging rents in excess of those permitted by the rental agreements . . . ; [c]harging rents in excess of those permitted by Montgomery County Department housing code, relating to [the MPDU] Program.

(ECF No. 50 ¶¶ 45-47).

24

The MCPA "specifically prohibits any person from engaging in unfair and deceptive procedures in the rental or offer for rental of consumer realty." *Golt v. Phillips*, 308 Md. 1, 8 (1986) (citing Md. Code Ann., Com. Law § 13-303). Critically, however, the Maryland Court of Appeals "has only applied the [MCPA] in landlord/tenant cases where the unfair or deceptive practice occurred during the establishment of the landlord/tenant relationship between the parties." *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 683 (1994) (citations omitted), *overruled on other grounds by Brooks v. Lewin Realty III, Inc.*, 378 Md. 70 (2003).

> A landlord's acts or omissions during the term of the lease are fully regulated by comprehensive landlord and tenant statutes as well as the common law. Although [the MCPA] governs deceptive practices involved in the establishment of the landlord/tenant relationship, we do not believe the legislature intended the [MCPA] to be applicable to statements or omissions concerning the leased premises occurring during the term of the lease.

*Id.* at 683-84; *Berg v. Byrd*, 124 Md.App. 208, 214 (1998) ("Accordingly, the relevant time period to consider when determining whether there has been a violation of the [MCPA] is the time the parties enter into the lease."). Here, Plaintiffs offer no allegations concerning fraud or deception at the establishment of a rental agreement, instead averring that employees of Defendant made false or misleading statements

25

during the rental term. Because Plaintiffs' allegations of fraud do not arise from the inception of the rental agreement, she cannot state a claim under the MCPA.

### C. Unjust Enrichment (Count III)

In Count III of the fourth amended complaint, Plaintiffs assert a claim for unjust enrichment against Defendant. Plaintiffs contend that "Defendant unjustly received and retained benefits and received money overpayments at the expense of [P]laintiffs, and [P]laintiffs are . . . entitled to restitution for extorted payments over the rental agreement amount." (ECF No. 50 ¶ 37). Under Maryland law, unjust enrichment requires: (1) a benefit conferred upon the defendant by the plaintiff; (2) the defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). Critically, however:

> The general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests . . . . The reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of

> having those expectations defeated. As a
> result, they have no remedy under the
> contract for restoring their expectations.
> In desperation, they turn to quasi-contract
> for recovery. This the law will not allow.

*Cty. Comm'rs of Caroline Cty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000) (quoting *Mass Transit Admin. v. Granite Constr. Co.*, 57 Md.App. 766, 776 (1984)); *see also FLF, Inc. v. World Publications, Inc.*, 999 F.Supp. 640, 642 (D.Md. 1998) ("It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties.").

Defendant argues that, "[h]ere, Plaintiffs expressly alleged . . . that the parties had a 'rental agreement,' which covered the parties' conduct, and that [Defendant] demanded payment over that amount." (ECF No. 53-1, at 12 (citing ECF No. 50 ¶¶ 7, 22, 28, 37, 46)). Contract remedies were available to Plaintiffs, and, moreover, the fourth amended complaint lacks factual allegations regarding specific contractual obligations owed by Defendant to Plaintiffs. Accordingly, the pleading fails to state a claim for unjust enrichment.

### D. Negligence (Count IV)

Plaintiffs assert in Count IV that "Defendant[] owed a legal duty of care to prevent unreasonable, foreseeable damages of harm to [] Plaintiff[s]." (ECF 50 ¶ 38). Plaintiffs offer

27

little   factual   support   or   clarity,   adding   only   that
"[D]efendant['s]   failure   to   adequately   train   and   supervise   its
agents   and   employees   with   regard[]   to   the   requirements   of   the
[f]ederal   and   [s]tate   [l]aws."   (*Id.* ¶ 41).   To   state   a   claim
for   negligence,   a   plaintiff   must   allege   that:   (1)   the   defendant
was   under   a   duty   to   protect   the   plaintiff   from   injury;   (2)   the
defendant   breached   that   duty;   (3)   the   plaintiff   suffered   actual
injury   or   loss;   and   (4)   the   loss   or   injury   proximately   resulted
from   the   defendant's   breach   of   the   duty.   *Quigley v. United
States*,   865   F.Supp.2d   685,   696   (D.Md.   2012).

As   Defendant   points   out,   "Plaintiffs   have   not   alleged   that
[Defendant]   owed   a   special   tort   duty   of   care   to   Angelene   to
present   error-free   rental   statements.   Although   Maryland   law   has
regularly   held   that   landlords   owe   []   certain   duties   to   their
tenants,   these   duties   are   normally   limited   to   the   physical
wellbeing   and   safety   of   tenants."   (ECF   No.   53-1,   at   14
(footnote   omitted)).   In   Maryland,   causes   of   action   based   on
negligence   or   negligent   misrepresentation   require   the   plaintiff
to   prove   a   duty   owed   to   them.   *Jacques v. First Nat'l Bank of
Maryland*,   307   Md.   527,   531   (1986).   "A   contractual   obligation,
by   itself,   does   not   create   a   tort   duty.   Instead,   the   duty
giving   rise   to   a   tort   action   must   have   some   independent   basis."
*Mitchell, Best & Visnic, Inc. v. Travelers Prop. Cas. Corp.*,   121
F.Supp.2d   848,   853   (D.Md.   2000)   (citing   *Mesmer v. Md. Auto. Ins.*

28

*Fund*, 353 Md. 241, 253 (1999)); *see Hemmings v. Pelham Wood Ltd.
Liability Ltd. P'ship*, 375 Md. 522, 552 (2003) ("In the absence
of statute or special relationship, there is no duty to protect
another from harm."). Here, Plaintiffs identify no basis for
such a special relationship giving rise to any specific duties
in tort.   Furthermore, to the extent that their claim arises
from alleged negligent training and supervision, Plaintiffs
offer no supporting facts.   The conclusory statement in Count IV
– that Defendant "fail[ed] to adequately train and supervise its
agents and employees" – is not supported by any other allegation
in the fourth amended complaint.   *See Horridge v. St. Mary's
Cty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004) (dismissing
the plaintiff's negligent supervision claim because the pleading
included "no allegations that [the defendant's employees] were
professionally or personally unqualified for the positions they
held or that, if they were unqualified, [the defendant] was or
should have been aware of that fact").   Plaintiffs' negligence
claim will be dismissed.

## IV.  Conclusion

To this point, Plaintiffs have been given five bites at the
apple – the original complaint and four amended complaints –
"and there is no reason to think that a [sixth] bite would bear
fruit."   *Tasciyan v. Med. Numerics*, No. 11-1467-AW, 2011 WL
6097977, at *5 (D.Md. Dec. 6, 2011); *see Giacomelli*, 588 F.3d at

29

197 ("[T]he district court did not abuse its discretion in failing to give the plaintiffs a blank authorization to 'do over' their complaint."). For the foregoing reasons, the motion to dismiss filed by Defendant will be granted. A separate order will follow.

                                /s/
                                DEBORAH K. CHASANOW
                                United States District Judge